IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:20CR14-1 |
| | ) | |
| | ) | |
| NIKKI DECOLE CUNNINGHAM-QUICK | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Nikki Decole Cunningham-Quick's pro se Motion for Compassionate Release [Doc. #47]. The basis for her motion is COVID-19 – her increased risk of severe illness were she to contract it and its impact on conditions of confinement and access to medical care. For the reasons explained below, her motion is denied.

On September 23, 2021, Cunningham-Quick was sentenced to thirty-six months' imprisonment. "The court may not modify a term of imprisonment once it has been imposed except", as is relevant here, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier". 18 U.S.C. § 3582(c)(1)(A). This threshold requirement is non-jurisdictional and, therefore, may be waived or forfeited. United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021). And, Cunningham-Quick argues that "the COVID-19 pandemic presents circumstances that justify

waiving the 30-day waiting period". However, nothing in her motion supports waiving the requirement. The Government responds that because "BOP records do not show that the defendant requested the Director of BOP to move the court for a reduction in [her] sentence", "the motion is not properly before the district court" and should be denied. The Court agrees. In light of Cunningham-Quick's failure to satisfy the threshold requirement and the Government's position on the matter, the motion is denied.

Even if Cunningham-Quick's motion were properly before the Court, it would be denied for failure to show extraordinary and compelling reasons for relief, 18 U.S.C. § 3582(c)(1)(A)(i). See United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (finding "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A)," "empower[ing]" courts "to consider any extraordinary and compelling reason for release that a defendant might raise") (citation omitted); U.S. Sentencing Guideline § 1B1.13, Application n.1 (providing circumstances found to be extraordinary and compelling) cited in McCoy, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants").

Cunningham-Quick contends that "the unexpected rigors of incarceration during the pandemic present 'extraordinary and compelling' reasons that can justify a sentence reduction". She describes the restrictive conditions of confinement with limited visitors and programming, although she acknowledges that inmates at FPC Alderson where she is housed are permitted to leave their housing units for

2

grab-and-go meals, scheduled medical appointments, GED classes, and scheduled outdoor recreation. There is no doubt that the restrictions imposed on inmates to curb the spread of COVID-19 have been difficult and frustrating for those incarcerated. However, the Bureau of Prisons ("BOP") is responsible for implementing procedures to protect staff and inmates from COVID-19, and the Court is not in a position to question the restrictions imposed to do just that.

Cunningham-Quick is also concerned about the risk of severe illness from COVID-19 that she faces because of her medical conditions. She has been diagnosed by providers at FPC Alderson with various medical conditions, at least two of which are recognized by the Centers for Disease Control and Prevention ("CDC") as increasing the likelihood of severe illness from COVID-19. CDC, COVID-19 Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 14, 2021) (identifying, as is relevant here, obesity and possibly hypertension as increasing the risk of severe illness). And, that risk "increases as the number of underlying medical conditions increases in a person." Id. However, at her sentencing just over four months ago, the Court was well aware of the presence of COVID-19 in BOP facilities as well as Cunningham-Quick's possible health conditions, although the veracity of her claims of ill health was questionable, and she was nevertheless sentenced to a custodial sentence. Furthermore, despite discussion about permitting her to self-report to her designated BOP facility, she was ordered

3

detained in the custody of the U.S. Marshals at the close of her sentencing hearing.

Cunningham-Quick alleges that the BOP is not providing adequate medical care because of or in relation to COVID-19 and that inmates are forced to care for themselves. Nothing before the Court supports such a finding. Cunningham-Quick's medical records from FPC Alderson show that she not only received a full physical assessment upon arrival at the facility, but that she has continued to receive regular monitoring of her vitals, Health Services sick call appointments, evaluation for the Chronic Care Clinic, and prescriptions.

Cunningham-Quick describes the prison environment as a "petri dish[] for contagious respiratory illnesses" because infection control is challenging, and she quotes undated and uncited criticisms of the BOP's ability to curb the spread of COVID-19. She claims that FPC Alderson has one of the worst outbreaks of COVID-19. The facility reports that 244 inmates have recovered from COVID-19 and two have succumbed to it. BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (updated Feb. 1, 2022). As of February 1, 2022, fifty-two of the facility's 643 inmates are positive. Id.; BOP, FPC Alderson, https://www.bop.gov/locations/institutions/ald/ (providing inmate population). While the Omicron variant is likely responsible for the increasing number of inmates testing positive, seventy-five staff members and most of FPC Alderson's inmate population are fully vaccinated, https://www.bop.gov/coronavirus/ (reporting 523 inmates fully vaccinated which equates to over 80% of the inmate population),

4

including Cunningham-Quick who self-reported to staff that she had been vaccinated. At least as important is the BOP's offering of booster shots to inmates in accordance with CDC guidance, id., as studies have shown that "[d]uring both Delta- and Omicron-predominant periods, receipt of a third vaccine dose was highly effective at preventing COVID-19-associated emergency department and urgent care encounters (94% and 82%, respectively) and preventing COVID-19-associated hospitalizations (94% and 90%, respectively), Thompson MG, Natarajan K, Irving SA, et al. Effectiveness of a Third Dose of mRNA Vaccines Against COVID-19–Associated Emergency Department and Urgent Care Encounters and Hospitalizations Among Adults During Periods of Delta and Omicron Variant Predominance — VISION Network, 10 States, August 2021–January 2022. MMWR Morbidity & Mortality Weekly Report 2022; 71:139–145, available at https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e3.htm?s_cid=mm7104e3_x#suggestedcitation (Jan. 28, 2022).

In sum, although Cunningham-Quick's medical conditions increase the risk of severe illness from COVID-19 and there are active cases at FPC Alderson, she has not met her burden of showing that extraordinary and compelling reasons warrant release. She reports that she is vaccinated, although it is unknown if she has received a booster shot, over 80% of her fellow inmates and seventy-five staff members are fully vaccinated, booster shots are available, and she is receiving regular medical treatment.

5

Even had Cunningham-Quick met her burden (and the threshold requirement), the factors from 18 U.S.C. § 3553(a) counsel against release. She argues that she is not a danger to the community and that her health risks outweigh the seriousness of her offense. She contends that, if released, she would abide by home confinement restrictions and be better able to access to medical care. First, as explained above, nothing before the Court suggests that Cunningham-Quick does not already have easy access to medical care at FPC Alderson. Next, as she has done throughout the pendency of her criminal case, she fails to appreciate the significance of her repeated fraudulent conduct and, although not violent or deadly, the danger it poses to the community.

As part of the relevant conduct underlying her conviction, Cunningham-Quick prepared fraudulent tax returns for tax years 2012 through 2017 that resulted in $1,494,924,26 in tax loss. Those returns included false Schedule C expenses, false tuition and fees and/or education credit, false residential energy credit, false filing status or dependent, and false household help income. And, after she was contacted by the agents from the Internal Revenue Service ("IRS") in February 2017, she continued to prepare fraudulent tax returns in 2017 for tax year 2016.

Even after indictment, her fraud continued. Cunningham-Quick was indicted on January 27, 2020, arrested two days later, and released on conditions. She was arraigned on February 6 at which time she pled not guilty to all counts. A month later, she pled not guilty to the nine charges alleged in a superseding

6

indictment. She ultimately entered a guilty plea on July 9 to one of the nine counts (aiding in the preparation of a false tax return), and her sentencing hearing was scheduled for October 23.

On June 23, July 6, October 12, and December 29, 2020, Cunningham-Quick submitted applications for Economic Injury Disaster Loans, as expanded by the CARES Act. These low interest loans were intended for eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. As part of the loan program, small businesses could receive advances of up to $10,000 (based on the number of employees) within three days of applying for a loan, and the advances did not have to be repaid. Cunningham-Quick's applications for her business Nikki's Party Planning and Catering each included different information on the number of employees, gross revenue, and cost of goods sold in the preceding twelve months. And, she answered "No" under penalty of perjury to the following questions: "Are you presently subject to an Indictment . . . arraignment, or other means by which formal criminal charges are brought in any jurisdiction?" and "Within the last 5 years, for any felony, have you ever been convicted, plead guilty, . . . ?" From the circumstances, it is unquestionably reasonable to infer Cunningham-Quick's false statements in each of the four applications were material and made knowingly. Fortunately, it does not appear as though she received any funds because either her economic injury could not be substantiated, her application was deemed a duplicate, or she did not meet the eligibility criteria. (See Presentence Report ¶¶ 32-40.)

7

Case 1:20-cr-00014-NCT   Document 51   Filed 02/03/22   Page 7 of 10

Cunningham-Quick's fraudulent conduct next found its target in the Court. At her March 25, 2021 sentencing hearing[1], her attorney reported that she was at his office and had told him she had a fever of 103.1 and was vomiting on the way to his office, although he acknowledged that he had no way to independently confirm the information. So that her attorney could prepare for the rescheduled hearing to be held on May 14, the Court posited its questions and concerns resulting from a review of Cunningham-Quick's medical records, including a letter purportedly authored by her physician.

Prior to the next hearing date, Cunningham-Quick's United States Probation Officer investigated the authenticity of the physician's letter and determined that he was not the author. And, he testified to that at the May 14 sentencing hearing. In other words, Cunningham-Quick committed fraud on the court when she knowingly submitted a fabricated document with her physician's forged signature intending to influence a sentencing determination.

In addition, an IRS special agent testified at the May 14 hearing that Cunningham-Quick was still preparing income tax returns for tax years 2020 and 2021 after she pled guilty. Those returns shared a lot of common features with the earlier false returns, and, based on the agent's training and experience, some of the 2020 and 2021 returns were also false and fraudulent.

---

[1] The October 23 hearing was continued at her attorney's request so that he could continue his compilation and review of her medical records and history.

Toward the close of the hearing, as the Court was explaining conditions of supervised release, Cunningham-Quick fell to the floor. A recess was taken, she was transported to the hospital, and the matter was continued. Prior to the next hearing on August 26, Cunningham-Quick's attorney moved to withdraw and sent her a certified letter advising her of his intent to do so. At the hearing, the motion was granted, but Cunningham-Quick told the Court that she was unaware of her attorney's intentions until she arrived for the hearing. Later that day, though, the United States Probation Office notified the Court that Cunningham-Quick was well aware of her attorney's motion to withdraw. On August 25, she had contacted her Probation Officer to ask if she still had to report to court the following day because her attorney was moving to withdraw. In other words, Cunningham-Quick once again made a false statement to the Court.

Finally, at the close of the September 23 hearing, after the Court determined that Cunningham-Quick could not be permitted to self-report to her designated BOP facility, she spoke about her alleged medical conditions and treatment in an effort to persuade the Court to permit her to self-report. She said that she had "been running a fever of 103 today" and that it has "been high ever since I got here". To confirm the veracity of that statement, her temperature was taken by the U.S. Marshals. She had no fever. This was yet another false statement made to the Court, this time to influence a decision as to her custodial situation.

In sum, having served just over four months of her 36-month term of imprisonment, Cunningham-Quick still does not appear to appreciate the gravity of

her criminal conduct. Even after being indicted and pleading guilty in this matter, she submitted false applications for loans under the CARES Act. And, she continued preparing false federal income tax returns. In addition, before the Court, she submitted false documents and made false statements to influence her sentence and her ability to remain at liberty until designated to a BOP facility. She has not provided any argument or evidence of her post-sentencing conduct that would suggest she has committed herself to abiding by the law or the truth.

For the reasons stated in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant Nikki Decole Cunningham-Quick's pro se Motion for Compassionate Release [Doc. #47] is DENIED.

This the 3rd day of February, 2022.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge